# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
                                    :
   UNITED STATES OF AMERICA
                                    :     INFORMATION
          - v. -
                                    :     S3 11 Cr. 866 (LTS)
   BANK JULIUS BAER & CO. LTD.,
                                    :
          Defendant.                :

- - - - - - - - - - - - - - - - x

### COUNT ONE
(Conspiracy)

The United States Attorney charges:

### Bank Julius Baer & Co. Ltd.

1.   At all times relevant to this Information, BANK
JULIUS BAER & CO. LTD. ("BJB"), the defendant, provided private
banking, asset management, and other services to individuals and
entities around the world, including U.S. taxpayers in the Southern
District of New York.  Until in or about 2005, BJB maintained an
office in the Southern District of New York.

### Obligations of U.S. Taxpayers
### With Respect to Foreign Financial Accounts

2.   At all times relevant to this Information, citizens
and residents of the United States who had income in any one calendar
year in excess of a threshold amount ("U.S. taxpayers") were required
to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"),

for that calendar year with the Internal Revenue Service ("IRS"). On Form 1040, U.S. taxpayers were obligated to report their worldwide income, including income earned in foreign bank accounts.  In addition, when a U.S. taxpayer completed Schedule B of Form 1040, he or she was required to indicate whether "at any time during [the relevant calendar year]" the filer had "an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account," and if so, the U.S. taxpayer was required to name the country.

3.   In addition, U.S. taxpayers who had a financial interest in, or signature or other authority over, a foreign bank account with an aggregate value of more than $10,000 at any time during a particular calendar year were required to file with the IRS a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1 ("FBAR") on or before June 30 of the following year.  In general, the FBAR required that the U.S. taxpayer filing the form identify the financial institution with which the financial account was held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR was being filed.

4.   The regulations relating to the required disclosure of foreign bank accounts specifically preclude U.S. taxpayers from

2

having foreign accounts nominally held by sham corporate structures

as a means of avoiding disclosure.  Specifically, as set forth in

Title 31, Code of Federal Regulations, Section 1010.350(e)(3):

> A United States person that causes an entity, including
> but not limited to a corporation, partnership, or trust,
> to be created for a purpose of evading this section
> [requiring generally the disclosure of offshore financial
> accounts containing over $10,000 and over which a U.S.
> taxpayer has signature or other authority] shall have a
> financial interest in any bank, securities, or other
> financial account in a foreign country for which the entity
> is the owner of record or holder of legal title.

### Overview of the Conspiracy

5.    From at least in or about 2001 up through and

including in or about 2009, numerous U.S. taxpayer-clients conspired

with BJB, the defendant, and others known and unknown, to defraud

the United States, to conceal from the IRS the existence of bank

accounts maintained at BJB and the income earned in these accounts

(hereafter "the undeclared accounts"), and to evade U.S. taxes on

income generated in the undeclared accounts.  At its peak in or

around 2007, BJB conspired with U.S. taxpayer-clients to hide at

least $4.7 billion in assets from the IRS in accounts at BJB.  In

furtherance of the conspiracy, client advisors at BJB, among other

things, advised and helped U.S. taxpayer-clients open and maintain

undeclared accounts in code names or in the names of non-U.S.

relatives or sham corporate entities; ensured that mail relating to

those accounts was not sent to U.S. taxpayer-clients in the United

3

States; caused U.S. taxpayer-clients to travel to Switzerland to conduct business relating to the undeclared accounts; traveled to the United States to meet with U.S. taxpayers; and, in or about 2008 and 2009, assured U.S. taxpayer-clients that they did not have to be concerned about the undeclared accounts being discovered by the IRS or U.S. law enforcement authorities because unlike UBS AG, another Swiss bank that was being investigated at the time by U.S. authorities for engaging in similar practices, BJB no longer had offices in the United States and the accounts would therefore remain secret.

### Means and Methods of the Conspiracy

6.   Among the means and methods by which BJB, the defendant, and its co-conspirators carried out the conspiracy were the following:

a.   BJB client advisors opened and managed for U.S. taxpayer-clients bank and securities accounts at BJB that were not reported to the IRS on Forms 1040, FBARs, or otherwise, and the income from which was also not reported to the IRS.

b.   BJB client advisors permitted U.S. taxpayer-clients to open undeclared accounts using code names or numbers so that the U.S. taxpayers could sign their code names or numbers on bank documents, rather than use their usual signatures, and otherwise ensure that the U.S. taxpayer-clients' names would

4

appear on the fewest possible documents relating to their accounts.

        c.    BJB client advisors permitted U.S. taxpayer-clients to place assets in undeclared accounts held in the name of foreign relatives in order to conceal the U.S. taxpayer-clients' beneficial ownership of such assets.

        d.    BJB client advisors permitted U.S. taxpayer-clients to maintain undeclared accounts at BJB held in the name of sham corporate entities in order to conceal the U.S. taxpayer-clients' beneficial ownership of such assets.

        e.    BJB client advisors ensured that account statements and other records relating to undeclared accounts held at BJB by U.S. taxpayer-clients were not sent to these clients in the United States.

        f.    BJB client advisors caused U.S. taxpayer-clients with undeclared accounts at BJB to travel from the United States to Switzerland in order to discuss their undeclared accounts.

        g.    Certain BJB client advisors traveled to the Southern District of New York to review account information with U.S. taxpayer-clients with undeclared accounts at BJB.

        h.    Various U.S. taxpayer-clients of BJB, including taxpayer-clients in New York, New York, filed false Forms 1040 that failed to report their interest in, and income earned from, their

undeclared BJB accounts; evaded income taxes due and owing; and
failed to file FBARs identifying their undeclared accounts.

### Statutory Allegations

7.    From at least in or about 2001 up through and
including in or about 2009, in the Southern District of New York and
elsewhere, BJB, the defendant, together with others known and
unknown, willfully and knowingly did combine, conspire, confederate,
and agree together and with each other to defraud the United States
of America and an agency thereof, to wit, the IRS, and to commit
offenses against the United States, to wit, violations of Title 26,
United States Code, Sections 7206(1) and 7201.

8.    It was a part and an object of the conspiracy that
BJB, the defendant, together with others known and unknown, willfully
and knowingly would and did defraud the United States of America and
the IRS for the purpose of impeding, impairing, obstructing, and
defeating the lawful governmental functions of the IRS in the
ascertainment, computation, assessment, and collection of revenue,
to wit, federal income taxes.

9.    It was further a part and an object of the conspiracy
that various U.S. taxpayer-clients of BJB, the defendant, together
with others known and unknown, willfully and knowingly would and did
make and subscribe returns, statements, and other documents, which

6

contained and were verified by written declarations that they were made under the penalties of perjury, and which these U.S. taxpayer-clients, together with others known and unknown, did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

10.   It was further a part and an object of the conspiracy that BJB, the defendant, together with others known and unknown, willfully and knowingly would and did attempt to evade and defeat a substantial part of the income tax due and owing to the United States of America by certain of BJB's U.S. taxpayer clients, in violation of Title 26, United States Code, Section 7201.

### Overt Acts

11.   In furtherance of the conspiracy and to effect the illegal objects thereof, BJB, the defendant, and others known and unknown, including BJB client advisors acting within the scope of their employment with BJB, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   In or about 2006, Fabio Frazzetto ("Frazzetto"), a BJB client advisor and co-conspirator not named as a defendant herein, opened new undeclared accounts for several U.S. taxpayer clients at BJB.

b.   On or about March 30, 2006, the head of BJB's North America Team, a group of BJB client advisors who assisted a

7

number of U.S. taxpayer-clients in maintaining undeclared accounts at BJB, sent an email to members of the North American Team regarding "Do's and Don'ts" when travelling to the United States to meet with U.S. clients.

        c.   In or about 2007 or 2008, Frazzetto met with a U.S. taxpayer client at a hotel in Manhattan.

        d.   In or about the summer of 2008, Daniela Casadei ("Casadei"), a BJB client advisor and co-conspirator not named as a defendant herein, assisted a U.S. taxpayer-client in transferring assets from an undeclared account at UBS AG into an undeclared account at BJB for the U.S. taxpayer-client under the name "Conto Green-White-House."

        e.   In or about June 2009, Casadei advised a U.S. taxpayer client that the client could maintain an undeclared account at BJB if the client agreed to the formation of a corporate entity that would then become the account holder of the client's undeclared account at BJB.

f.   In or about August 2009, Frazzetto opened a new undeclared account in the name of an Israeli citizen and resident who was a cousin to a family of U.S. taxpayer clients.  Frazzetto then transferred the U.S. family's assets into the account nominally held by the Israeli cousin in order to further conceal the U.S. taxpayer-clients' financial interest in those funds.

(Title 18, United States Code, Section 371.)

PREET BHARARA
United States Attorney